Good morning and may it please the court. Caitlin Weisberg on behalf of petitioner Glenn Wiersma. I'd like to reserve two minutes for rebuttal. For 25 years Mr. Wiersma reasonably believed that he was safe from deportation because no one told him anything to the contrary and because the government Sorry to start you out right in the middle but you sort of led with the chin a little bit. What do you mean no one told him? In 2009 they told him that he was guilty of an aggravated felony and couldn't get naturalized citizenship. I like to lead with the chin. It invites the questions. Naturalization is not the same thing as deportation and nothing in that communication from the immigration service. Seems like your better argument would be he's been here for 25 years and hasn't been deported therefore he would have thought that no one was going to deport him. Which is a valid complaint against our immigration services. This is a quorum nobis. It's not an immigration proceeding. So far as we know nobody is trying to deport Mr. Wiersma. We hope not. I'm going to ask the government that too. I hope they say they're not going to. He's still in LPR. Yes. So the issue in this case, although it may have immigration consequences, is whether we should set aside a conviction obtained 25 years ago as you say. And our case law seems to say that unless there's something more than just the failure to instruct about the consequences of a plea, that's not enough to set aside the plea. Assuming that I'm accurately representing our case law, what's the something more here? Sure. And I think your question raised two points. So I'll start with that one first. The something more here is the simultaneous state court representation where the attorney, as a matter of the factual basis for this petition, the attorney in fact in 1995 represented Mr. Wiersma in both state court and federal court. And in state court he had obligations. Well, he may have had obligations, but our cases seem to say you need something like an affirmative misrepresentation. He may have performed below the standard expected, but unfortunately the decision that deals with failing to tell about immigration consequences is not retroactive. So tell me what affirmative thing occurred here other than the lawyer screwing up? Well, Your Honor, with respect, I think that's too narrow a reading of Kwan and the cases that came before Padilla and Chavez. The case law has been unfairly reduced to this very sort of constricted notion of advise, failure to advise or misadvise, failure to advise. And that's not what the cases that came before said. The cases that came before and in fact Chavez and Chan say that you apply the general Strickland standard to the particular factual circumstances of the case to determine if the attorney was ineffective. What case do you rely on for that? Because I haven't read that sort of into the prior case law. Kwan says that. Kwan says something more and that something more can be misadvise, which is what was determined in Kwan. But that was not the exclusive. Kwan didn't purport to say this is the only something more that exists. But do you have something else? I mean, you're asking us then to push forward. You don't have a case you're relying on that says this is the something more. Neither of the parties have cited any case that has this factual circumstance like this one where there's a simultaneous representation and coordinated negotiated pleas. I mean, it was clearly done in tandem. The attorney was working on both cases and state law clearly imposed these obligations. Can he set aside his state conviction? He has not. Could he? He could under the case law. It would not help. I mean, under the California case law or under under the Strickland case laws, you read it both. Well, under the California case, let's assume I don't read the Strickland case law the way you do. Could he set it aside under California? Yes, he could. And those are the cases that we've cited in our brief. And there's some dispute in the briefs between the government and petitioner about the meaning of those. Just a factual question. So there's something more you're relying on in this case. Is that counsel, in your view, breached his obligations under California law in the California plea? Correct. That I'm just trying to figure out, is there anything else in the case to get? Is there anything else factual that gives you something more in this case? There is. But also to clarify that point, it's not just that he breached his duties in the California case. He breached his professional duties and there's no strategic purpose for district duties. Is there another breach other than just not advising them of the of the immigrant impact on his immigration status? He misled Mr. Wiersma based on the impression left by the plea agreement. Based on an omission. Based on an omission and based on the plea agreement. I just want to be clear about the record. I understand your legal argument. Am I correct in saying there's no affirmative misrepresentation here? Mr. Wiersma says in the proceedings below, nobody ever told me anything about the consequences. So I've assumed from that you're not claiming any affirmative misrepresentation. Mr. Wiersma's declaration does not state, my attorney told me this and I later learned that was wrong. And is there anything in this record to suggest that somebody told him that? It is our contention that the plea agreement has a provision on conditions of release. No, okay. I know what you mean. That will let you go finish your education. Let's assume that that doesn't carry the day for you. No, that's it. Anything else? No, there's nothing else in the record. I just want to make sure I understand. Absolutely. So your argument, aside from the plea agreement, really boils down to counsel was required under the rules of professional responsibility at the time to tell Mr. Wiersma all the consequences of his plea and he failed to do so. That is true, but no, it was also state law at the time. And the case is cited in our brief. Soriano... Well, the state law was simply state decisions that said it was your responsibility to do so. Absolutely. Okay. Counsel, even if he gets past that hurdle, he still has to show sound reason for delay. Yes. And all along the way, there are signs that would have caused a reasonable person to investigate. It seems he's turned a blind eye to all of the opportunities that he had to further investigate. With respect, Your Honor, I don't believe those were signals to investigate. I think those were signals that would cause a reasonable person to believe that they were safe. And that was where I was going at the outset. All these contacts with the government, with licensing agencies, with his green card re-applications, none of them triggered any removal proceedings of any kind. And when removal proceedings seemingly were on the table, he was informed that he was not going to be placed into removal proceedings. So during this entire period, he really had no idea. I mean, he doesn't understand immigration law. Well, he consulted an immigration attorney 10 years after USCIS told him he wasn't eligible to become a citizen. Yes. What wasn't, I mean, to an objective person, why isn't USCIS telling you that your convictions make you ineligible for citizenship, at least enough to give notice that you might be in some jeopardy of remaining in the country? Because that is the extent of what the statement said. And legal permanent status is different from naturalization. What led him to consult an immigration attorney 10 years later? Does this record tell us? That is not in the record, Your Honor. Doesn't he have some obligation to explain the delay? He does, absolutely, and that is what he did. He explained. But the district court didn't buy it. The district court said, I find this to be undue delay. That's correct. So do we give some deference to the district court's finding on that? No, it is de novo review. Whether the court believes his explanation is de novo review? Well, the court didn't disbelieve his explanation. The court said there's no justification for the delay, and I'm not aware of any case law that says that's reviewed de novo. I think we give substantial deference to the district courts in those circumstances. Quorum nobis determinations are reviewed de novo, and delay is one of the four reasonable sound reasons for de novo. Right, but the finding of fact that supports the determination is not given de novo review. Well, the court didn't make a finding of fact, as I read the opinion. Well, it did make a finding that you said you were unreasonably delayed in light of all the circumstances. Well, it wasn't in light of all the circumstances. The court's ruling was that if it was misadvice, if you had misadvice, then maybe your delay was reasonable, but it was nonadvice, so your delay is not reasonable. And that, according to the case law, is not a distinction that is made in the context of delay. A reasonable delay is established when, from the position of the noncitizen, from the position of the noncitizen, was their ignorance reasonable? Was their unawareness of their jeopardy reasonable? And to return to Your Honor's question in the beginning, the cases almost all arise in the context of deportation proceedings being initiated, but that's not the trigger. And so when he consulted counsel and learned that he was in jeopardy, that's when he filed his petition. He could not wait at that point until deportation proceedings were initiated. That would have been unreasonable delay. Why don't we give you a minute for rebuttal since you're over? Thank you very much. Thank you. We'll hear from the government. Thank you, Your Honor. May it please the court, Greg Knapp of the government. Before you get started, I have a very important question for you. Are you looking to deport this guy? Not to my knowledge. I mean, candidly, Your Honor. Could you stipulate that with the other side and we could all go home? I don't have that authority, but I think it's very clear from this record and indeed from Mr. Weir's most life story that the Department of Homeland Security apparently has little interest in him as an enforcement priority. And that's the best I can do. I mean, they're clearly aware of his status, his aggravated felon status, and yet we've been here for years. This is sort of the problem the government keeps running into is it doesn't enforce the laws and then the immigrants say, well, I didn't think I was violating the law because you weren't enforcing it. I mean, how do we grapple with that? Because here's a guy who – I mean, it is true. He kept filing these applications and getting extensions. That's some indication that either he wasn't violating the law or the government didn't care. Well, first of all, I'd say you grapple with that, that even if that's true, I mean, it doesn't satisfy a standard for why his counsel was allegedly ineffective. I agree with you on that, but it does – I think it goes more to the delay point we've been discussing. But what about that? Counsel said that we review that de novo. Do we – my understanding is we would give deference to the finding of the district court on the delay point, but is it – Factual findings, yes. I mean, now I ask the legal question. Do you consider this a factual finding or is this a legal question that we would review de novo, the delay? Honestly, I had considered the sound reason as a legal question. I wasn't aware of any factual disputes. It is part of the test. And as to why it's not sufficient, as has been observed, Mr. Wiersma has known about this conviction for 25 years, and not only the conviction, but that it carried some immigration consequences. Now, on appeal, Mr. Wiersma is trying to slice it very thin and say that my reason for delay is because during those times no one told me unequivocally that there was no deportation risk. But interestingly, that's different from what he argued below. Below, Mr. Wiersma argued that his delay was justified by, yes, the alleged absence of notice regarding deportation, but also the alleged absence of notice regarding the inability to naturalize. But then, of course, that was shown to be false. And now Mr. Wiersma has tried to shift gears. I'm sorry. Part of the problem with Zoom is that there's a little delay. So finish what you were going to say, and then I'll ask the question I wanted to ask. I was just going to add also that there's no legal authority for the concept that ignorance of a particular consequence of an immigration consequence of conviction is itself sufficient. I mean, it's on the petitioner to demonstrate valid reasons for not challenging the conviction. In fact, wouldn't holding that, that would expose a whole bunch of cases to a claim that there wasn't delay here, because you've got to figure that the vast majority of immigrants wouldn't understand immigration law, and it would be a little odd to give them such great latitude simply for not seeking counsel to explain it to them. Of course. I mean, it would almost read out of existence the requirement for a sound reason for delay because a petitioner could simply wait until the initiation of a particular consequence and then claim ignorance of that risk. I wanted to ask you, because this case is a little strange because it's a quorum nobis. We keep talking about immigration consequences, but what Mr. Wiersma is trying to do is, in effect, set aside his plea entered 25 years ago to a felony. If he were able to do so, could the government actually try that case? No. Because it was 25 years ago. Right, and also, I mean, there's no prosecution team, there's no records. I mean, one thing that is established in the record that's relevant to latches is that there is no longer any case files. I mean, this could not be prosecuted again. Did the district judge base the decision in this case on possible prejudice to the government or not mention it? I know you argued that on appeal, but was there any finding by the district judge on prejudice to the government? Yes, the district court found that due to the lapse of time, due to the failure to exercise diligence, the government, through no fault of its own, that's the words of the court, through no fault of its own, has found itself in a position where it can't defend against this claim. It can't build a record of what happened. So what I'm trying to focus on is this. Even if we thought there wasn't an absence of due diligence, would the prejudice issue on its own be sufficient to affirm the denial of quorum nobis? The standard is when the government makes a prima facie showing of prejudice, that is sufficient unless that is rebutted by the petitioner. And so I think the answer to your question is yes, just with that one nuance, that hypothetically in a different case, that could be sufficient. And here the prejudice is that none of the documents exist from the underlying conviction because it was so long ago and the attorneys who've handled it are no longer around. Is that the basic gist? Yes. And most notably, the defense attorney literally is no longer around. He is deceased. That really doesn't matter because once you undo the plea, which is what quorum nobis would do, he could hire a new lawyer to defend him. The problem is you can't prosecute him because you no longer have the, I take it, any of the facts or the information that would allow you to do so. Correct. But with respect to the death of the defense attorney, I was speaking not so much to prejudice as to inability to re-prosecute, but prejudice as to defend against the underlying charge that it was ineffective assistance of counsel. Yeah, but see, all that ineffective assistance of counsel gets you is a new trial, and that's why I'm trying to figure out whether the government would be prejudiced if it had to try this 25-year-old case. Yes. So we'd be prejudiced. I think there are two prejudices that are relevant here. First, prejudice as to no sources from which to refute Mr. Weirisman's allegation as to the ineffective assistance. And then second, as Your Honor has observed, prejudice on the prosecutional front. Okay, but he'd have to show the ineffective assistance in order to prevail in the quorum nobis. Yeah, and your point is you couldn't defend on the merits against the quorum nobis because there's nobody left for you to interview. Correct. Can I ask just one question that kind of caught my eye? It may not have a huge relevance, but Weirisman argues in his reply that his affirmative misrepresentation argument is not subject to plain error review because only claims and not arguments need to be preserved. It's interesting because the Supreme Court has a slightly different take on this than the Ninth Circuit does, which I hadn't paid as much attention to. What's the government's response to that? Because we do in the Ninth Circuit seem to have some case law that says if you didn't raise the argument, that's rejected. But the Supreme Court has actually gone the other way. Could we have a different rule than the Supreme Court on that? I don't think it's a different rule because the Supreme Court is speaking in that Yvie Escondido case cited by the petitioners, speaking of the standards governing which questions are fairly presented to the court. I mean, there's more discretion at the Supreme Court level in order to define the scope of what it decides to decide. The general rule on direct appeals in this court, as Your Honor has observed, is that arguments not raised below are forfeited. Now, to be fair, Mr. Weirisman did cite one case for that proposition, you know, Payar Escalon, in which this court did depart somewhat from that rule. I read that as recognizing that in the end analysis, this court always has some authority to set that rule aside if there were not being injustice, particularly in Payar Escalon. The district court was aware of the argument that the petitioner then raised on appeal, even though the district court didn't directly address it. On those circumstances, this court elected to proceed and consider the argument because there would be no, you know, prejudice. In this case, I would say that, in fact, the government would be prejudiced if this court simply overlooked plain error review because Mr. Weirisman is raising an entirely new argument that was never presented to the court regarding the alleged implications of the plea agreement. Well, but let's assume for a moment that we agree with your merits argument about the implications of the plea agreement. Then we could, assuming that was the case, we could ignore forfeiture at our discretion and just move on to the merits. Of course. Of course. And perhaps that's a cleaner disposition if the court does not find any textual basis for Mr. Weirisman's interpretation of the plea agreement. And so bringing this full circle, that brings us back to the other basis he has for trying to allege affirmative misadvice, which is simultaneous state representation. This court has never read Kwan to extend to such a basis for finding something more that would get you by Shidez. It does leave, I mean, I agree with you. And I think your opposing counsel agrees with you that Kwan doesn't say that, but Kwan does leave the door open that that universe hasn't been defined. Correct. But then Shan in 2015 arguably closes that door because it reads Kwan as saying that it was about affirmative misrepresentation. Moreover, Shan sets a very narrow exception to Shidez. And so it would be a great extension to now at this point read that further to Okay. Well, thank you for your argument. We'll give one minute for rebuttal. Thank you. Thank you. I wanted to address the issue of retrying the case. Mr. Weirisman is not trying to get out of a conviction or anything else. He would agree to plead guilty to a non-deportable offense. The finality of convictions is, of course, important, and it is unfortunate that the government would not be able to retry the case. But if it was a constitutionally invalid conviction, that would be an insufficient basis, we would argue, to not rule in his favor. Opposing counsel in discussing lashes said that as soon as they prove prejudice, the burden flips, but that's not true. It's the defense's burden to prove both aspects of lashes in the first instance, one of which is unreasonable delay. And so that's why the prejudice sort of falls away if the unreasonable delay favors Weirisman. So your position is if there's not unreasonable delay, then it doesn't matter how much the government is prejudiced? Yes, Your Honor. Okay, that's your position. And lastly, it's untrue that there's no one left around. The government attorneys who worked on this case are not deceased. They're around. They just have no records. The government itself has no records. There's nothing in the records that indicates that anyone has asked the government attorneys what they remember about the case and what they could bring to the table. Thank you very much. Thank you to both counsel for your arguments today. The case is now submitted.
judges: HURWITZ, NELSON, Kane